UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Cause No. 1:18-CR-0284-JMS-DLP |
| TRACY BARTON, | ) |
| | ) |
| Defendant. | ) |

## PETITION TO ENTER PLEA OF GUILTY AND PLEA AGREEMENT

The United States of America, by counsel, John E. Childress, Acting United States Attorney for the Southern District of Indiana, and, Tiffany J. Preston, Assistant United States Attorney ("the Government"), and the defendant, TRACY BARTON ("BARTON" or "the defendant"), in person and by counsel, Michael J. Donahoe, hereby inform the Court that a Plea Agreement has been reached in this case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The following are its terms and conditions:

### Part 1: Guilty Plea and Charge(s)

1. **Plea of Guilty:** The defendant petitions the Court for leave to enter and agrees to enter a plea of guilty to the following offenses charged in the Indictment:

a. Count 1 which charges that the defendant committed the offense of Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349.

2. **Dismissal of Counts:** Following imposition of sentence, the government will move to dismiss Counts 2 through 3 of the Indictment, without prejudice. If the defendant

complies with all the terms of this Plea Agreement, then the Government will not seek to refile these charges.

3.     **Potential Maximum Penalties**:  The offense is punishable by a maximum sentence of 20 years' imprisonment, a $250,000 fine, and 3 years' supervised release following any term of imprisonment.

4.     **Elements of the Offense:**  To sustain the offense(s) to which the defendant is pleading guilty, the Government must prove the following elements beyond a reasonable doubt:

As to Count One, that the defendant knowingly conspired to devise and participate in a scheme or artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts as described in Count One of the Indictment;

Second, that the defendant did so knowingly and with intent to defraud; and

Third, that the defendant caused interstate wire communications to take place in furtherance of the scheme to defraud as described in Count One of the Indictment.

## Part 2:  General Provisions

5.     **Sentencing Court's Discretion Within Statutory Range:**  The defendant agrees and understands that: (A) the Court will use its discretion to fashion a sentence within the statutory range(s) set forth above; (B) the Court will consider the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence within the statutory range(s); (C) the Court will also consult and take into account the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") in determining the appropriate sentence within the statutory range(s); (D) the Sentencing Guidelines are not mandatory or binding on the Court, but are advisory in nature; (E) restitution may be imposed; (F) by pleading "Guilty" to more than one offense (Count), the Court

may order the sentences to be served consecutively one after another; (G) the final determination concerning the applicable advisory guideline calculation, criminal history category, and advisory sentencing guideline range will be made by the Court; and (H) by pleading "Guilty," the Court may impose the same punishment as if the defendant had plead "Not Guilty," had stood trial and been convicted by a jury.

6. **Sentencing Court Not Bound by Guidelines or Recommendations:** The defendant acknowledges that this Plea Agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(B) and that the determination of the defendant's sentence is within the discretion of the Court. The defendant understands that if the Court decides to impose a sentence higher or lower than any recommendation of either party, or determines a different advisory sentencing guideline range applies in this case, or decides to impose a sentence outside of the advisory sentencing guideline range for any reason, then the defendant will not be permitted to withdraw this plea of guilty for that reason and will be bound by this plea of guilty.

7. **Plea Agreement Based on Information Presently Known:** The defendant recognizes and understands that this Plea Agreement is based upon the information presently known to the Government. The Government agrees not to bring other federal charges against the defendant based on information currently known to the United States Attorney for the Southern District of Indiana.

The Government will inform the Court and the defendant at the time of taking the defendant's plea whether the Government has obtained any information after the Plea Agreement was signed that may warrant bringing other federal charges against the defendant.

8.      **No Protection From Prosecution for Unknown or Subsequent Offenses:**  The defendant acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense not specifically covered by this agreement, or not known to the United States Attorney for the Southern District of Indiana at this time.  The defendant further acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement.

9.      **Rights Under Rule 11(b), Fed. R. Crim. P.:**  The defendant understands that the Government has the right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath during the guilty plea colloquy.  The defendant also understands that the defendant has the right: (A) to plead not guilty, or having already so pleaded, the right to persist in that plea; (B) to a jury trial; (C) to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceedings, including appeal; and (D) to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.  The defendant also understands that the Constitution guarantees the right to be considered for release until trial[1]; and if found guilty of the charge(s), the right to appeal the conviction on such charge(s) to a higher court.  The defendant understands that if the Court accepts this plea of guilty, the defendant waives all of these rights.

---

[1]Title 18, U.S.C. §§ 3141-3156, Release and Detention Pending Judicial Proceedings.

## Part 3:  Sentence of Imprisonment

**10.     Sentencing Recommendation Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):**  The parties have **not** agreed upon a specific sentence.  The parties reserve the right to present evidence and arguments concerning what they believe to be the appropriate sentence in this matter.

**a.     Government's Recommendation:**   The Government has agreed to recommend a sentence at the lowest end of the applicable Sentencing Guidelines Range as calculated by the Court during the sentencing hearing, provided that the defendant (i) continues to fully accept responsibility for the offense, (ii) does not commit a new criminal offense before the date of any sentencing, and (iii) does not otherwise violate the terms of any pre-trial release before the date of sentencing.

**b.     Defendant's Recommendation:**  The defendant understands that he is free to recommend any sentence including a sentence of no imprisonment.

**11.     Placement:**  The defendant reserves the right to request that this Court recommend to the Federal Bureau of Prisons that the defendant serve any sentence of imprisonment imposed in this case at an institution identified at the time of sentencing.  The defendant acknowledges and understands that any recommendation by the Court is only a recommendation and does not bind the Federal Bureau of Prisons.  The Government does not object to the defendant's requested recommendation.

**12.     Supervised Release:**  Both parties reserve the right to present evidence and arguments concerning whether the Court should impose a term of supervised release to follow any term of imprisonment in this case, the duration of any term of supervised release, and the terms and conditions of the release.

13.   **Conditions of Supervised Release:**   The parties understand and agree that the Court will determine which standard and special conditions of supervised release to apply in this case.  The parties reserve the right to present evidence and arguments concerning these conditions.

### Part 4:  Monetary Provisions and Forfeiture

14.   **Mandatory Special Assessment:**   The defendant will pay a total of $100 assessment on the date of sentencing or as ordered by the Court to the Clerk, United States District Court, which amount represents the mandatory special assessment fee imposed pursuant to 18 U.S.C. § 3013.

15.   **Fine:** The United States will not recommend a fine be imposed.

16.   **Restitution:**   The defendant agrees to pay restitution for all losses caused by the defendant's conduct, regardless of whether counts of the Indictment dealing with such losses will be dismissed as part of this plea agreement.

The defendant agrees that, while the District Court sets the payment schedule, this schedule may be exceeded if and when the defendant's financial circumstances change.  In that event, and consistent with its statutory obligations, the Government may take any and all actions necessary to collect the maximum amount of restitution in the most expeditious manner available.

17.   **Obligation to Pay Financial Component of Sentence**:  If the defendant is unable to pay any financial component of the defendant's sentence on the date of sentencing, then the defendant agrees that the payment of the financial component should be a condition of supervised release.  The defendant has a continuing obligation to pay the financial component of the sentence. The defendant further agrees that as of the date of filing this Plea Agreement the defendant will provide all requested financial information, including privacy waivers, consents, and releases requested by the Government to access records to verify the defendant's financial disclosures,  to

the Government for use in the collection of any fines, restitution, and money judgments imposed by the Court and authorizes the Government to obtain credit reports relating to the defendant for use in the collection of any fines and restitution, and money judgments imposed by the Court. The defendant also authorizes the Government to inspect and copy all financial documents and information held by the United States Probation Office. If the defendant is ever incarcerated in connection with this case, the defendant may participate in the Bureau of Prisons Inmate Financial Responsibility Program.

18.    **Forfeiture**: The defendant admits that the payments Barton and others received from Muncie Sanitary District and Muncie (as calculated by the Court at sentencing), and items purchased using those payments property is contraband, was used to facilitate, or constitutes the fruits of the commission of the offense(s) to which the defendant is pleading guilty, and, therefore, is subject to forfeiture to the United States. The defendant abandons all right, title, and interest the defendant may have in the property so that proper disposition, including destruction, may be made thereof by federal, state, or local law enforcement agencies involved in the investigation of the defendant's criminal activity, without further notice or obligation whatsoever owing to the defendant. The defendant further agrees not to contest any forfeiture action brought against and consents to the forfeiture of any of the property, whether any such forfeiture action is administrative, judicial, civil, or criminal, and agrees not to contest any use or destruction of any of the property listed below by any federal, state, or local law enforcement agency. If any of the forfeitable property described above, as a result of any act or omission by defendant:

A.  cannot be located upon the exercise of due diligence;

B.  has been transferred or sold to, or deposited with, a third party;

C.  has been placed beyond the jurisdiction of the court;

D.  has been substantially diminished in value; or

E.  has been commingled with other property which cannot be divided without difficulty; the United States of America shall be entitled to forfeiture of substitute property pursuant to the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).  The defendant consents to the entry of orders of forfeiture for such property and waives the requirements of Rules 32.2 and 43(a), Fed. R. Crim. P., regarding notice of the forfeiture in the charging document, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  The defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

F.  The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

### Part 5:  Factual Basis for Guilty Plea

**19.**  The parties stipulate and agree that the following facts establish a factual basis for the defendant's plea of guilty to the offense set forth in Paragraph One, above, and that the Government would be able to establish the following facts beyond a reasonable doubt in the event this cause was to proceed to trial.  The following information is only a summary of the

Government's evidence. This Plea Agreement is not intended to foreclose the presentation of evidence and the Government reserves the right to present additional evidence at the time of sentencing.

Defendant TRACY BARTON was MSD's Superintendent of Sewer Maintenance and Engineering. He was appointed to the position in 2013. As the MSD's Superintendent, BARTON reported to Debra Nicole Grigsby, and was responsible for selecting and managing certain MSD contractors.

Debra Nicole Grigsby ("Grigsby") was the District Administrator of the Muncie Sanitary District ("MSD"), and a resident of the Southern District of Indiana. She was appointed to the position in 2014. As the District Administrator for MSD, Grigsby was responsible for approving the selection of contractors to perform work on MSD Infrastructure Projects. She also signed maintenance contracts on MSD's behalf.

Phil Nichols ("Nichols") served as the Chairman for a political party in Delaware County ("the political party") from approximately 1990 through approximately 1998. Though Nichols had no official position or title within the political party after approximately 1998, Nichols maintained a private office at the political party's headquarters and continued to exert influence and control over multiple official acts performed by certain Muncie public officials.

Jess Neal ("Neal") was a Sergeant in the Muncie Police Department, and the owner of Red Carpet, Inc. and Express Properties, LLC. Neal exerted outsized influence in the Muncie Police Department and with other Muncie public officials.

### The Paying Contractors

Tony Franklin ("Franklin") was the owner of Franklin Building and Design, LLC ("Franklin Building"), in Muncie, Indiana. Franklin Building performed demolition and general

construction work for MSD. Rodney Barber ("Barber") was the owner of Barber Contracting, Inc., in Muncie, Indiana. Barber Contracting, Inc. performed demolition and general construction work for MSD. Person A was the owner of Company A, in Gaston, Indiana. Company A performed contracting work for MSD. Person B was the owner of Company B, in Muncie, Indiana. Company B performed contracting work for MSD. Person C was the owner of Company C, in Muncie, Indiana. Company C performed contracting work for MSD.

The City of Muncie ("Muncie") was a unit of local government, and a political subdivision of the State of Indiana. Muncie was located in the Southern District of Indiana. The functions and services provided by Muncie were coordinated through various agencies and departments. MSD was a special unit of government created under Indiana State Law by a Muncie ordinance adopted in 1968. MSD was located in the Southern District of Indiana. Muncie/MSD maintained a business bank account at First Merchant's Bank Corp. ("Muncie's City Account"). Muncie received federal assistance in excess of $10,000 during the one-year period beginning January 1, 2015 and ending December 31, 2015.

Residents and businesses living and operating in Muncie paid MSD for its services such as recycling, sanitation, sewer maintenance, storm water management, and utilities. Those payments were deposited into Muncie/MSD's business bank account. Payments to contractors who performed work on public works projects were drawn from MSD/Muncie's bank account.

The Muncie Sanitary District Board ("MSDB") was a three-member board whose responsibilities included approving or disapproving claims reports from MSD's public officials seeking authorization to pay contractors hired to do work for MSD. Grigsby reported to the MSDB.

**The MSD Infrastructure Projects and the Sewer, Storm Water, and Levee Projects**

Beginning in or about 2014, MSD began a series of public works projects to improve Muncie's Sewer, Sanitary, and Flood Control Systems (the "MSD Infrastructure Projects"). MSD was also responsible for maintaining the Muncie sewer and storm water, and levee systems, and in some cases awarded contracts to private companies to repair, maintain, or mow those systems (the "Sewer, Storm Water, and Levee Projects").

MSD public officials, such as BARTON and Grigsby, were required to solicit quotes from contractors who wished to perform work for MSD, and to select the lowest responsive contractor who submitted a quote. After Grigsby awarded work to a contractor, Grigsby presented claims reports to the MSDB seeking authorization to pay the contractor for the work. After the MSDB approved the claims reports, MSD employees were authorized to pay contractors via checks drawn from Muncie's City Account.

BARTON further acknowledges that checks drawn from Muncie's City Account and deposited into the business bank accounts of Franklin Building, and Companies A, B, and C were processed through the Federal Reserve Bank Check Processing Centers located in Cincinnati, Ohio, or Chicago, Illinois, and traveled in interstate commerce. Grigsby further acknowledges that checks deposited into First Merchant's Bank in Muncie, Indiana, were uploaded through a facility of interstate commerce to a server located in Florida. First Merchant's bank was insured by the Federal Deposit Insurance Corporation. The internet is a facility of interstate commerce, and Rodney Barber used an E-mail account to submit fraudulent invoices from Barber Contracting, Inc. to MSD.

**The Scheme to Defraud MSD**

Beginning in or about March 2015, and continuing to the present,  BARTON, Grigsby, Phil Nichols, Jess Neal, Tony Franklin, and others, devised, intended to devise, and participated in a scheme or artifice to defraud MSD, and to obtain money and property of MSD by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts made by MSD public officials to the MSDB, in exchange for cash bribes and kickbacks, benefits, or property, to cause the clearing of checks drawn on the Muncie City Account, and deposited into the Paying Contractors' business bank accounts ("the Scheme"), through the following means and methods:

The Scheme, known to some of the coconspirators as "the Program," was an illegal agreement by BARTON, Nichols, Grigsby, Neal, and the Paying Contractors to defraud MSD by presenting materially false and fraudulent claims reports to the MSDB to cause the MSDB to approve the clearing of checks drawn on the Muncie City Account and deposited into the Paying Contractors' business bank accounts.

The claims reports that Grigsby and others presented to the MSDB were materially false and fraudulent because Grigsby and others concealed the coconspirators, Nichols', Grigsby's, and BARTON's illegal agreement to solicit and accept bribes and kickbacks from the Paying Contractors, and to falsify the Paying Contractors' quotes, bids, and invoices arising out of MSD public works projects during the conspiracy period.

As a result of the Scheme, the MSDB approved the clearing of checks drawn on Muncie's City Account to pay the invoices submitted to MSD by the Paying Contractors for work on MSD projects that they procured through fraud.

<u>Means and Methods of the Scheme to Defraud MSD</u>

It was part of the Scheme that BARTON, Grigsby, Nichols, Neal, other Muncie public officials, and the Paying Contractors participated in a criminal conspiracy to steer MSD public works contracts to the Paying Contractors, in exchange for cash bribes and kickbacks, benefits, or property, to BARTON, Nichols, Grigsby, Neal, and others.

BARTON, Nichols, Grigsby, Neal, and others, accepted the cash bribes and kickbacks, benefits, or property, and used them for their own personal expenditures, or Nichols surreptitiously gave a portion of the illegal cash payments to the political party or members of the political party. Nichols used his influence and control within the political party to direct the performance of official acts by Grigsby and BARTON within MSD, namely, their decisions to award MSD public works projects to those Paying Contractors who paid or agreed to pay Nichols cash bribes and kickbacks.

BARTON and Grigsby abused their positions of public trust and conspired with Nichols, Neal, Franklin, and others to steer contracts for work arising out of MSD Infrastructure Projects to Franklin Building in exchange for Nichols and Grigsby receiving something of value from Franklin, through Neal, including bribes, kickbacks, benefits, money or property. Indeed, BARTON is aware that Nichols accepted a cash bribe at Nichols' office in the political party's headquarters from Franklin, through Grigsby and Neal.

BARTON also conspired to steer the remaining demolition contracts arising out of the MSD Infrastructure Projects to Barber Contracting, Inc., and Companies A and B in exchange for something of value from Companies A and B, including cash kickbacks, benefits, or property paid to BARTON. Grigsby and BARTON awarded contracts for demolition work arising out of the MSD Infrastructure Projects to Barber Contracting, Inc., and Companies A and B knowing that

BARTON had rigged the bidding process and procured fraudulent quotes.

As a result of the Scheme, BARTON, Nichols, Grigsby, Neal, Franklin,  and others, caused MSD to award demolition contracts arising out of the MSD Infrastructure Projects to the following Paying Contractors in exchange for something of value, including cash kickbacks, benefits, money, or property:

| Contractor | Number of Bids | Number of Awards | Value of Awards |
|---|---|---|---|
| Franklin Building and Design, LLC | 7 | 7 | $134,600 |
| Barber Contracting, Inc. | 38 | 14 | $ 263,274 |
| Company A | 36 | 18 | $ 376,219 |
| Company B | 4 | 1 | $ 16,000 |
| Company C | 34 | - | - |
| **Total** | **119** | **40** | **$ 790,093** |

Additionally, BARTON acknowledges that Grigsby, without first obtaining competing quotes, fraudulently awarded an approximately $12,500 concrete removal contract arising out of MSD Infrastructure Projects to Franklin Building.  Grigsby and BARTON agreed that BARTON would obtain fraudulent back-dated quotes from contractors for the concrete removal work that Grigsby had already awarded to Franklin Building to conceal fraudulent conduct.

Franklin Building, Barber Contracting, Inc., and Companies A and B submitted invoices to MSD for demolition work arising out of the MSD Infrastructure Projects.  Grigsby presented claims reports to the MSDB and caused the MSDB to authorize payment to Franklin Building, Barber Contracting, Inc., and Companies A, B, and C for work arising out of MSD Infrastructure Projects, and for work arising out of the repair, maintenance, and mowing of the levee and storm and sewer systems.  BARTON, Nichols, Grigsby, Neal, and others caused MSD to draw funds from Muncie's City Account to be deposited into the business bank accounts of Franklin Building,

Barber Contracting, Inc., and Companies A and B.

BARTON, Nichols, Grigsby, Neal, Franklin, and others, falsified documents, or caused documents to be falsified, and concealed the Scheme to defraud from federal investigators and other law enforcement officers.   BARTON, Nichols, Grigsby, Neal, Franklin, and others did misrepresent, conceal, and hide, and caused to be misrepresented, concealed, and hidden, acts done in furtherance of the Scheme and the purpose of those acts.

As a result of said scheme to defraud, and as set forth in Count One of the Indictment, beginning in or about March 2015, and continuing to on or about October 23, 2018, in the Southern District of Indiana, Indianapolis Division, and elsewhere, TRACY BARTON and others, did knowingly and intentionally conspire and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, by devising a scheme or artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, or promises, specifically by transmitting or causing to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, and signals, namely, a clearing of checks drawn on the Muncie City Account, and deposited into the business bank accounts of Franklin Building and Design, LLC, Barber Contracting, Inc., and Company's A, B, and C, and by using facilities of interstate commerce to submit fraudulent invoices.

<u>Contracts Awarded to Franklin Building as a Result of the Scheme</u>

BARTON further admits that as part of the Scheme, Grigsby directed BARTON to award two demolition contracts to Franklin Building arising out of the MSD Infrastructure Projects. Grigsby provided BARTON with the dollar amounts set forth on Franklin Building's fraudulent quotes so that BARTON could obtain higher quotes from Barber Contracting, Inc. and Company A.  This was intended to ensure that Franklin Building's quotes for the two demolitions would be

the lowest.  After BARTON obtained the fraudulent quotes from Barber Contracting, Inc. and Company A, Grigsby then awarded two demolition contracts arising out of MSD Infrastructure Projects to Franklin Building.

Grigsby then directed BARTON to award two additional contracts for demolitions on Howard Street arising out of MSD Infrastructure Projects to Franklin Building.   BARTON knowingly obtained fraudulent quotes from Barber Contracting and Company C, so that Franklin Building's quotes for the two demolitions arising out of MSD Infrastructure Projects would be the lowest.

During the time period in which Franklin Building began to work on the Howard Street projects, Nichols met with Grigsby and BARTON, and ordered Grigsby and BARTON to discontinue awarding contracts to Franklin Building.   Grigsby and BARTON followed Nichols' order, and discontinued awarding demolition contracts to Franklin Building.  Subsequently, BARTON acknowledges that Neal approached Grigsby at Muncie City Hall, and asked Grigsby why Franklin Building had not been awarded additional demolition contracts arising out of MSD Infrastructure Projects.  BARTON acknowledges that Grigsby then told Jess Neal that Nichols had ordered Grigsby and BARTON to discontinue awarding contracts to Franklin Building.

BARTON admits that he was aware that Franklin, through Neal and Grigsby, paid Nichols a cash bribe, and that Nichols then allowed Grigsby and BARTON to award additional MSD contracts to Franklin Building as part of the Scheme. Franklin then submitted fraudulent quotes to MSD for Franklin Building to demolish three additional homes arising out of the MSD Infrastructure Projects.  BARTON obtained fraudulent quotes from Barber Contracting, Inc., and Company A, so that Franklin Building's quotes for the two demolitions arising out of the MSD Infrastructure Projects would be the lowest.

16

As set forth above, MSD was also responsible for awarding contracts associated with the Sewer, Storm Water, and Levee Projects.  BARTON admits that during the conspiracy period, BARTON, Nichols, Rodney Barber, and others, steered MSD contracts for sewer water repair and maintenance work to Barber Contracting, Inc.  In total, BARTON admits that Barber Contracting, Inc. received a contract for sewer water repair and maintenance work as a result of the Scheme resulting in $67,377.87 in checks drawn on Muncie's City Account to be deposited into Barber Contracting, Inc.'s bank accounts at First Merchant's Bank.  BARTON also acknowledges that Rodney Barber paid $5,500 in cash directly to Phil Nichols in exchange for receiving the for the sewer water repair and maintenance work.

BARTON further admits that as a result of the Scheme, between in or about October 2015, and on or about October 12, 2018, MSD awarded Barber Contracting, Inc. a $3,800 tree removal job resulting in a $9,800 check drawn on Muncie's City Account to be deposited into Barber Contracting, Inc.'s bank accounts at First Merchant's Bank.

BARTON further admits that BARTON and Nichols steered contracts to mow the levee system to Person C through Company C.  BARTON admits that he asked Rodney Barber to submit fraudulent quotes to Tracy Barton so that Person C, through Company C, would be awarded the mowing contract work.

<u>Other Conduct</u>

BARTON further admits that in or about August 2014, and continuing until on or about 2016, in the Southern District of Indiana, Indianapolis Division, and elsewhere the defendant, BARTON did knowingly alter, destroy, mutilate, conceal, cover up, falsify, or make a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter in the jurisdiction of any department or agency

of the United States, namely an investigation by the Federal Bureau of Investigation.

BARTON further admits that on or about May 25, 2016, and continuing until at least September 20, 2016, in the Southern District of Indiana, Indianapolis Division, and elsewhere, the defendant, BARTON did knowingly attempt to intimidate and corruptly persuade Person B, from communicating truthfully with a law enforcement officer about information relating to the commission of a Federal offense, namely, Wire Fraud, with the intent to hinder, delay, or prevent the truthful communication of Person B with a law enforcement officer.

<u>Gratuity to Mayor Dennis Tyler</u>

BARTON further admits that Dennis Tyler ("Tyler') was the Mayor of Muncie and was elected to that position in 2012.   BARTON acknowledges that as Mayor, pursuant to Indiana Code, Tyler was the city executive and head of the executive branch.  BARTON acknowledges that Tyler's powers and duties included supervising subordinate officers, signing bonds, deeds, and contracts of the city, and approving licenses issued by the city. BARTON acknowledges that Tyler was further responsible for overseeing Muncie's departments and agencies.

BARTON further acknowledges that the Office of Muncie Community Development, the Board of Public Works and Safety, and the Muncie Redevelopment Commission are agencies or departments within Muncie.

Person A was the owner of Company A.  Company A was incorporated in Gaston, Indiana, and performed demolition, excavation, and construction services in Muncie.  At times material to this Indictment, Company A was awarded jobs for public work projects performed for Muncie.

BARTON admits that beginning in or about 2014, and continuing through on or about August 25, 2016, in the Southern District of Indiana and elsewhere, BARTON tendered Tyler, otherwise than as provided for by law for the proper discharge of his official duties,  something of

value from Person A, that is, $5,000, for or because of any official act performed or to be performed by Tyler, that is, the awarding of contracts under Tyler's influence or control to Company A.

More particularly, BARTON acknowledges that the Walnut Commons Project was an approximately $8.3 million housing development that was intended to house Veterans who were experiencing homelessness. He further acknowledges that funding for the project came from the Indiana Housing and Community Development Authority, the City of Muncie Office of Community Development, Meridian Health Services, and Federal Home Loan Bank of Indianapolis. The Office of Community Development was an agency/department of the City of Muncie and overseen by Tyler.  The Walnut Commons Project was funded in part by a Home Investment Partnership Program grant through the U.S. Department of Housing and Urban Development (HUD).

Beginning in 2014, Tyler agreed to use his official position as Mayor of Muncie to steer demolition work on the Walnut Commons Project to Company A.  To that end, Tyler used his official capacity to pressure the developer and general contractor for the Walnut Commons Project to hire Company A at BARTON's request.  On March 27, 2015, the demolition work for the Walnut Commons Project was awarded to Company A as a result of Tyler's undue influence.  On or about April 23, 2014, Company A withdrew from the Walnut Commons Project after first ensuring, through BARTON, that Tyler would not be angered by the withdrawal.

BARTON acknowledges that on or about May 20, 2015, Muncie announced the Nebo Commons Project, which was a commercial development in Nebo Commons, Muncie.  He further acknowledges that the Nebo Commons Project was spearheaded by both the Muncie Board of Public Works (BOW), an agency/department within the City of Muncie, and Delaware County. One of Tyler's duties as Mayor was to oversee the BOW, appoint the board members, and sign

contracts on its behalf.

BARTON acknowledges that because the Nebo Commons Project was a public works project, it was subject to Indiana law which required public officials to solicit quotes from responsive contractors who were known to perform the type of work the contract required, and award the contract to the lowest responsive contractor who submitted a quote.

Instead of awarding the Nebo Commons Project to the lowest responsive bidder, Tyler awarded the contract to Company A which was not the lowest, responsive bidder, and signed the contract with Company A on October 14, 2015.

On or about December 10, 2015, Person A withdrew $5,238 in cash from Company A's bank account. Person A gave $5,000 of the cash withdrawal to BARTON, knowing that BARTON intended to give it to Tyler as a gratuity because Tyler had illegally steered contracts such as those related to the Walnut and Nebo Commons Projects to Company A.

In December 2015, BARTON admits that he met with Tyler in a parking lot in Muncie, Indiana, and gave Tyler the $5,000 he received from Person A. Tyler accepted the $5,000 after BARTON had asked him to steer work to Company A.

BARTON further admits that in or around the Fall of 2015, Rodney Barber removed a tree on the personal property of Tyler in exchange for favorable consideration in the awarding of future public works projects to Barber Contracting, Inc.

Finally, BARTON admits that on September 29, 2018, BARTON saw Jess Neal at a local establishment in Yorktown, Indiana. During their conversation, Jess Neal told BARTON that agents of the Federal Bureau of Investigation had questioned Neal about the Scheme. Jess Neal then instructed BARTON not to talk to the Federal Bureau of Investigation.

## Part 6:  Other Conditions

**20.     Background Information:**  The defendant acknowledges and understands that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the defendant for the purpose of imposing an appropriate sentence.  The defendant acknowledges and understands that the Government is not prohibited from providing information concerning background, character, and conduct of the defendant for the purpose of recommending or advocating an appropriate guideline calculation and sentence.

**21.     Good Behavior Requirement:**  The defendant agrees to fully comply with all conditions of release imposed by the Court during all stages of this case.  If the defendant fails to fully comply with such conditions, then the Government may withdraw from this Agreement.

**22.     Compliance with Federal and State Laws:**  The defendant understands that the obligations of the Government in this Plea Agreement are expressly contingent upon the defendant abiding by federal and state laws.

## Part 7:  Sentencing Guideline Stipulations

**23.     Guideline Computations:** The parties reserve the right to present evidence and argument concerning the appropriate advisory Sentencing Guideline range for these offenses.  The parties have discussed this computation but have not agreed upon the advisory calculation.  They agree that the Court will make this determination.

**a.     Acceptance of Responsibility:**  To date, the defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct.  Based upon the defendant's willingness to accept a Plea Agreement and enter a plea of guilty to the criminal conduct noted in this agreement, the Government agrees that the defendant should receive a two (2) level reduction *provided* the defendant  satisfies the criteria set forth in

Guideline § 3E1.1(a) up to and including the time of sentencing.  The defendant timely notified the Government of defendant's intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently.  After the Defendant enters a plea of guilty, the Government intends to file a motion pursuant to U.S.S.G. § 3E1.1(b) requesting that the Court decrease the offense level by one (1) additional level.  The parties reserve the right to present evidence and arguments concerning the defendant's acceptance of responsibility at the time of sentencing.

### **Part 8:  Waiver of Right to Appeal**

24.     **Direct Appeal:**  The defendant understands that the defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined.  Acknowledging this right, and in exchange for the concessions made by the Government in this Plea Agreement, the defendant expressly waives the defendant's right to appeal the conviction imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742.  The defendant further expressly waives any and all challenges to the statute(s) to which the defendant is pleading guilty on constitutional grounds, as well as any challenge that the defendant's admitted conduct does not fall within the scope of the applicable statute(s). The defendant further agrees that in the event the Court sentences the defendant to sentence below or within the applicable Sentencing Guidelines as calculated by the Court at sentencing, and regardless of the defendant's criminal history category or how the sentence is calculated by the Court, then the defendant expressly waives the defendant's right to appeal the sentence imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. This blanket waiver of appeal specifically includes all provisions of the guilty plea and sentence imposed, including the length and conditions supervised release and the amount of any fine.

25. **Later Legal Challenges:**  Additionally, the defendant expressly agrees not to contest, or seek to modify, the defendant's conviction or sentence or the manner in which either was determined in any later legal proceeding, including but not limited to, an action brought under 18 U.S.C. § 3582 or 28 U.S.C. § 2255.  As concerns this Section 3582 waiver, should the United States Sentencing Commission and/or Congress in the future amend the Sentencing Guidelines to lower the guideline range that pertains to the defendant's offense(s) and explicitly make such an amendment retroactive, the Government agrees that it will not argue that this waiver bars the defendant from filing a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2) based on that retroactive Guidelines amendment.  However, if the defendant files such a motion, the Government may oppose the motion on any other grounds.  Furthermore, should the defendant seek to appeal an adverse ruling of the district court on such a motion, the Government may claim that this waiver bars such an appeal.  As concerns the Section 2255 waiver, the waiver does not prevent claims, either on direct or collateral review, that the defendant received ineffective assistance of counsel.

The Government further agrees that it will not assert this waiver as a bar to the defendant seeking a "compassionate release" sentence reduction pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling reasons" established by the defendant and consistent with U.S.S.G. § 1B1.13 application note 1(A) & (C) (or, in the event of amendment of those U.S.S.G. provisions, the provisions, if any, with the same effect at the time of the filing of the motion for sentence reduction).  However, the defendant waives any right to file more than one motion on the same basis.  Furthermore, if the defendant files more than one motion, the Government reserves the right to assert this waiver as a bar to an appeal from the

District Court's decision regarding that motion.  The government further reserves the right to oppose any motion for compassionate release on any other grounds.

26.    **No Appeal of Supervised Release Term and Conditions**:    The parties' reservation of the rights to present evidence and arguments in this Court concerning the length and conditions of supervised release is not intended to be inconsistent with the Waiver of Appeal specified above, which includes a waiver of the right to appeal to the length and conditions of the period of supervised release.

## Part 9:  Presentence Investigation Report

27.    The defendant requests and consents to the commencement of a presentence investigation by probation officers of the United States District Court for purposes of preparing a Presentence Investigation Report at this time and prior to the entry of a formal plea of guilty.

28.    The defendant further requests and consents to the review of the defendant's Presentence Investigation Report by a Judge, defendant's counsel, the defendant, and the Government at any time, including prior to entry of a formal plea of guilty.

## Part 10:  Immigration Consequences

29.    The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses, including the offenses to which the defendant is pleading guilty.  The defendant also recognizes that removal will not occur until service of any sentence imposed in this case has been completed.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the conviction in this case on the defendant's immigration status.  The defendant nevertheless

affirms that the defendant wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is the defendant's removal from the United States.

### Part 11:  Statement of the Defendant

**30.**     By signing this document, the defendant acknowledges the following:

**a.**     I have received a copy of the Indictment and have read and discussed it with my attorney.  I believe and feel that I understand every accusation made against me in this case. I wish the Court to omit and consider as waived by me all readings of the Indictment in open Court, and all further proceedings including my arraignment.

**b.**     I have told my attorney the facts and surrounding circumstances as known to me concerning the matters mentioned in the Indictment, and believe and feel that my attorney is fully informed as to all such matters.  My attorney has since informed, counseled and advised me as to the nature and cause of every accusation against me and as to any possible defenses I might have in this case.

**c.**     I have read the entire Plea Agreement and discussed it with my attorney.

**d.**     I understand all the terms of the Plea Agreement and those terms correctly reflect the results of plea negotiations.

**e.**     Except for the provisions of the Plea Agreement, no officer or agent of any branch of Government (federal, state or local), nor any other person, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence, or probation, or any other form of leniency, if I would plead "Guilty."  I respectfully request that the Court consider in mitigation of punishment at the time of sentencing the fact that by voluntarily pleading "Guilty" I have saved the Government and the Court the expense and inconvenience of a trial.  I understand that before it imposes sentence, the Court will address me personally and ask

me if I wish to make a statement on my behalf and to present any information in mitigation of punishment.

**f.**      I am fully satisfied with my attorney's representation during all phases of this case. My attorney has done all that anyone could do to counsel and assist me and that I fully understand the proceedings in this case against me.

**g.**      I make no claim of innocence, and I am freely and voluntarily pleading guilty in this case.

**h.**      I am pleading guilty as set forth in this Plea Agreement because I am guilty of the crime(s) to which I am entering my plea.

**i.**      I understand that if convicted, a defendant who is not a United States Citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**j.**      My attorney has informed me, and I understand, that I have the right to appeal any conviction and sentence that I receive, unless I have waived my right to appeal as part of this Plea Agreement.  If I have not waived my right to appeal, I understand that I must file a Notice of Appeal within fourteen (14) days of the entry of the judgment in this case; I further understand that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done.  I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

**k.**      My attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation office, then Section 3C1.1 of the Sentencing Guidelines allows the Court to impose a two-level increase in the offense level.

**l.**     If this cause is currently set for trial on the Court's calendar, I request that this date be continued to permit the Court to consider this proposed guilty Plea Agreement.  I further understand that any delay resulting from the Court's consideration of this proposed guilty Plea Agreement, up to and including the date on which the Court either accepts or rejects my guilty plea, will be excluded in computing the time within which trial of this cause must commence, pursuant to 18 U.S.C. § 3161(h)(1)(G).

### Part 12:  Certificate of Counsel

**31.**     By signing this document, the defendant's attorney and counselor certifies as follows:

**a.**     I have read and fully explained to the defendant all the accusations against the Defendant which are set forth in the Indictment in this case;

**b.**     To the best of my knowledge and belief each statement set forth in the foregoing petition to enter plea of guilty and Plea Agreement is in all respects accurate and true;

**c.**     The plea of "Guilty" as offered by the defendant in the foregoing petition to enter plea of guilty and Plea Agreement accords with my understanding of the facts as related to me by the defendant and is consistent with my advice to the defendant;

**d.**     In my opinion, the defendant's waiver of all reading of the Indictment in open Court, and in all further proceedings, including arraignment as provided in Rule 10, Fed. R. Crim. P., is voluntarily and understandingly made; and I recommend to the Court that the waiver be accepted by the Court;

**e.**     In my opinion, the plea of "Guilty" as offered by the defendant in the foregoing petition to enter plea of guilty and Plea Agreement is voluntarily and understandingly made and I

recommend to the Court that the plea of "Guilty" be now accepted and entered on behalf of the

defendant as requested in the foregoing petition to enter plea of guilty and Plea Agreement.

**Part 13:  Final Provision**

32.    **Complete Agreement:**  The defendant acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce the defendant to plead guilty.  This document is the complete and only Plea Agreement between the defendant and the United States Attorney for the Southern District of Indiana and is binding only on the parties to the Plea Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified except in writing, signed by all parties and filed with the Court, or on the record in open court.

Respectfully submitted,

JOHN E. CHILDRESS
Acting United States Attorney

4/29/21
DATE

Tiffany J. Preston
Assistant United States Attorney

4/28/21
DATE

~~Steven D. DeBrota~~ Nicholas J. Linder
Deputy Chief, Criminal Division

4/28/21
DATE

Tracy Barton
Defendant

4/28/21
DATE

Michael J. Donahoe
Counsel for Defendant

29